UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| EMERALD KALAMA CHEMICAL, LLC, | CASE NO. C17-5472 BHS |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART AND RESERVING RULING IN PART, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CONTINUE, RESERVING RULING ON PLAINTIFF'S DISPOSITIVE MOTIONS, AND REQUESTING ADDITIONAL BRIEFING |
| v. | |
| FIRE MOUNTAIN FARMS, INC., et al., | |
| Defendants. | |

This matter comes before the Court on Defendants Fire Mountain Farms, Inc. ("FMF"), Martha Ann Thode, and Robert J. Thode's ("Thodes") (collectively "Defendants") motion for summary judgment, Dkt. 31, and Plaintiff Emerald Kalama Chemical, LLC's ("Emerald") cross-motion for summary judgment, Dkt. 36, motion for partial summary judgment, Dkt. 40, and motion for relief from pre-trial deadlines and a continuance of the trial date, Dkt. 47. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

# I. PROCEDURAL HISTORY

On June 16, 2017, Emerald filed a complaint against Defendants alleging a violation of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et seq*. ("CERCLA"). Dkt. 1. Emerald sought reimbursement for necessary costs to investigate and remediate the release of hazardous substances and a declaratory judgment that Defendants "are liable for future response costs to be incurred by Emerald to address releases of hazardous substances at" Defendants' facilities. *Id*.

On September 6, 2017, the Court granted Defendants' motion to dismiss and granted Emerald leave to amend. Dkt. 18.

On September 13, 2017, Emerald filed an amended complaint. Dkt. 19. Emerald asserted a claim for violation of CERCLA and a claim for a declaratory judgment. *Id.* On September 27, 2017, Defendants answered and alleged a counterclaim asserting that, if there is CERCLA liability, Defendants seek "equitable allocation of response costs to Emerald and for a declaratory judgment that Emerald is liable for its share of future response costs." Dkt. 21.

On November 29, 2018, Defendants filed a motion for summary judgment. Dkt. 31. On December 17, 2018, Emerald filed a combined response and cross-motion for summary judgment. Dkt. 36. On December 21, 2018, Defendants replied. Dkt. 39. On December 27, 2018, Emerald filed a motion for partial summary judgment. Dkt. 40. On January 7, 2019, Defendants responded to Emerald's cross-motion. Dkt. 42. On January 11, 2019, Emerald replied. Dkt. 44. On January 14, 2018, Defendants responded arguing

that Emerald's second motion was unnecessary because Emerald seeks judgment on elements of its claim that are undisputed. Dkt. 45. The Court agrees with Defendants that the motion is unnecessary because the issues in the motion could have been resolved with a phone call and a stipulation. The motion also violates the local rule stating that "[a]bsent leave of the court, a party must not file contemporaneous dispositive motions, each one directed toward a discrete issue or claim." Local Rules W.D. Wash. LCR 7(e)(3). On January 18, 2019, Emerald replied. Dkt. 46.

On February 11, 2019, Emerald filed a motion for relief from pre-trial deadlines and a continuance of the trial date. Dkt. 47. On February 20, 2019, Defendants responded and opposed the request. Dkt. 49. On February 22, 2019, Emerald replied. Dkt. 51.

## II. FACTUAL BACKGROUND

The facts are mostly undisputed. Emerald manufactures organic chemicals at a plant in Kalama, Washington (the "Kalama Facility"). As part of its operations and with the oversight and approval of The Washington Department of Ecology ("Ecology"), the Kalama Facility operates a wastewater treatment plant. Among other things, the wastewater treatment plant treats groundwater containing toluene and trace amounts of benzene, both of which are "listed" wastes with applicable waste codes under the Washington regulations implementing the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA"). Dkt. 19, ¶¶ 8–9. The wastewater treatment plant produces 1) effluent that Emerald discharges to the Columbia River under a National Pollutant Discharge Elimination System ("NPDES") permit, and 2) a wet, spongey

material that contains recognized plant nutrients as well as trace amounts of components that are considered "hazardous substances" under CERCLA due to applicable waste codes. *Id.* ¶¶ 10–11.

The Thodes operate three family farms throughout Lewis County, Washington under the entity FMF. Dkt. 30, ¶ 2. In addition to farming, Defendants operated a biosolids management business wherein they "were paid to accept, transport, and recycle biosolids from various municipal wastewater treatment plants." *Id.* From 1995 to 2014, Emerald paid Defendants to accept "sludge" from Emerald, which they claim is very similar to biosolids. *Id.* ¶ 4; Dkt. 31 at 2. Defendants would mix the sludge with the biosolids and used the mixed material as a fertilizer on their fields. Dkt. 30, ¶ 4.

In late 2013, regulators from Ecology began to raise concerns "about excessive and inconsistent nitrate levels in soil and elevated nitrate in groundwater" in FMF's fields and in wells downgradient from the fields. Dkt. 37-2, ¶¶ 16. In January 2014, Ecology issued agreed orders requiring FMF to cease using mixed material at two of its three farms. Dkt. 19-1 at 4. In April 2014, Ecology notified Emerald that FMF could no longer accept the sludge. *Id.* at 5. Ecology also found as follows:

> In working with Emerald to identify other options for their sludge, Ecology discovered that the [Washington State Department of Agriculture ("WSDA")] fertilizer registration had lapsed in 2003. Therefore, even if the sludge was legitimately being used as a valuable product and applied directly to the land consistent with the application rate indicated on the required label (and not simply mixed with biosolids to avoid disposal costs), the sludge would have reverted back to its status as a dangerous waste and become subject to the Washington State Dangerous Waste Regulations, Chapter 173-303 WAC.

*Id.* In June 2014, Ecology issued an order requiring FMF to cease accepting and land applying Emerald's sludge. *Id.*

On September 11, 2014, Ecology issued an Administrative Order deeming that immediate action was necessary to comply with the Water Pollution Control Act, RCW Chapter 90.48, "including requiring preventive action to abate a substantial potential to pollute the waters of the state of Washington." Dkt. 19-1 at 3. The order stated that, although Emerald was the originator of the "dangerous waste sludge," Emerald and FMF were jointly and severally liable because FMF mixed the sludge with biosolids creating "a dangerous waste." *Id.* at 4–5. The order listed four corrective actions that the parties were required to implement, or face the imposition of civil fines. *Id.* at 6–8. The first three corrective actions related to preventing overtopping and release of pollutants to surrounding land and providing samples of the mixed material to Ecology within ten days. *Id.* The fourth corrective action related to managing and disposing of the mixed material, including a requirement to obtain an identification number from the Environmental Protection Agency ("EPA") for the material. *Id.* Relevant to the instant motions, the order provided that "Ecology has determined that [the parties] are not eligible for an opportunity to correct under RCW 34.05.110 because the effect of the violation poses a potentially significant threat to human health or the environment, or causes serious harm to the public interest." *Id.* at 8. Both parties appealed this order to the Pollution Control Hearings Board ("PCHB"). Dkt. 34 at 15.

In addition to the appeal, Emerald sought and obtained a "contained-in" determination from Ecology to manage stormwater that accumulated on top of the stored

mixed material at FMF. Dkt. 19-1 at 27–31. The order allowed Emerald to pump and transport the accumulated stormwater to Emerald's facility to be processed in the facility's wastewater treatment plant. *Id.* After receiving this order, the parties stipulated to a stay of the fourth corrective action during the pendency of the appeal. *Id.* at 33.

Ecology filed a motion for summary judgment in the PCHB appeal. In Emerald's response it stated that "[a]s Ecology acknowledges, '[t]his case is not about harm to human health or the environment.'" Dkt. 30 at 155 (citing Ecology's motion at 2). Thus, it seems that Ecology has at least somewhat retreated from its conclusion that the alleged violation is a threat to human health or the environment.

On September 28, 2015, the PCHB ruled in favor of Ecology. Dkt. 34 at 7–49 (order granting Ecology's motion for summary judgment and denying as moot FMF and Emerald's motions for summary judgment). FMF and Emerald petitioned for judicial review, but, in June 2016, they entered into an agreement with Ecology suspending judicial review and seeking "to establish an agreed schedule for Emerald and FMF to develop and submit for Ecology's approval closure plans for the three storage units at FMF, while at the same time petitioning Ecology and the [EPA] for delisting of the material in the three FMF storage units as dangerous/hazardous waste pursuant to" state and federal law. Dkt. 19-1 at 33. The parties also agreed that, if the material was successfully delisted, Emerald and FMF would dispose of the material at a non-hazardous waste landfill. FMF contends that this will cost millions of dollars but will still be millions of dollars less than if the parties are forced to dispose of the material at a hazardous waste facility. Dkt. 31 at 6 n.2.

In April 2018, Emerald and FMF jointly submitted their delisting petitions to the EPA. Dkt. 30 at 22–133. In that petition, the parties asserted in part as follows:

> The mixed material has been determined not to exhibit the characteristics of ignitability, corrosivity, or reactivity. The mixed material does not exhibit the characteristic of toxicity, either by the federal or WA state definitions. The mixed material is not a persistent dangerous waste. There has been no damage to human health or the environment from the management of the mixed material.

*Id.* at 37.

## III. DISCUSSION

### A. Summary Judgment

#### 1. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**2.  Section 113**

FMF moves for judgment on Emerald's claim for equitable contribution under Section 113 of CERCLA. Dkt. 31 at 10–11. Emerald argues that FMF is wrong for three reasons: "Emerald asserted claims under [§ 107 and § 113]; Emerald has a valid Section 113 claim; and in any event, Defendants' counterclaims converted this action into one for allocation of liability." Dkt. 36 at 7. Emerald's first argument is without merit because bringing a claim for contribution under Section 107 does not in and of itself validate a claim under Section 113.

Second, Emerald argues that it is entitled to bring a Seciton 113 claim because it "resolved its liability to" Washington. Dkt. 36 at 7–8. In making this argument, Emerald ignores the remainder of the statutory provision that provides the party "may seek contribution from any person who is not party to a settlement" resolving such liability. 42 U.S.C. § 9613(f)(3)(B). Because FMF is a party to the settlement with Washington, the plain language of the statute does not provide a right of contribution against FMF. Thus, Emerald's argument is contrary to explicit statutory language and it fails to even attempt to present an argument for modifying or extending this existing law.

Finally, Emerald argues that FMF's Section 113 cross-claim somehow validates its Section 113 claim. Emerald provides no authority for this proposition. Hypothetically, FMF's cross-claim is invalid as well, and it defies logic to argue that an invalid Section 113 cross-claim in and of itself supports the validity of a Section 113 claim. Therefore, the Court grants FMF's motion on Emerald's Section 113 claim.

### 3. Necessary Costs

FMF moves for judgment on Emerald's Section 107 claim arguing that the remediation costs were not necessary. Dkt. 31 at 11–13.

> To prevail in a private cost recovery action, a plaintiff must establish that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir. 1990) (footnote omitted). Emerald's unnecessary motion for partial summary judgment establishes that the parties only dispute the second and third elements. Even then, FMF contends that the "'hazard' is on paper only" and that "[t]here is no actual hazard." Dkt. 45 at n.1.

Regarding necessity, "[r]emediation costs are recoverable under CERCLA only if . . . an actual and real threat to human health or the environment exist[s] before initiating a response action." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001). "[T]he question whether a response action is necessary and consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage of a section 107(a) action." *Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 840 F.2d 691, 695 (9th Cir. 1988) ("*Cadillac*").

In this case, Defendants argue that Emerald has failed to show that any response costs was or is necessary because there was no actual and real threat to human health or the environment. Dkt. 31 at 13–20. Although Emerald has represented to every other government entity that neither its sludge nor Defendants' mixture of sludge is a hazardous waste threatening the environment, it takes the opposite position in this proceeding. While alternative arguments are allowed, the obvious change in stance for the purposes of this proceeding is curious. Upon review of the authorities provided by the parties, it seems that they have presented a question of first impression based on unique factual circumstances. Here, the parties are literally holding the relevant material in limbo while they pursue a determination that the material is not hazardous to clear the

way for a less expensive disposal than if they are required to dispose of the material as a hazardous waste. Defendants concede that the waste is hazardous on paper only, but those are fairly important pieces of paper. For example, Ecology issued an order requiring remedial actions for a violation that "poses a potentially significant threat to human health or the environment, or causes serious harm to the public interest." Dkt. 19-1 at 8. The PCHB board upheld this decision in part, requiring disposal of the material at a registered hazardous waste disposal site, but did not conclude that the material posed a threat to human health or the environment. Dkt. 34 at 7–49. Considering only those two decisions, it seems that any remediation cost would have been necessary in response to an actual threat to the environment. Defendants, however, are holding out hope that the EPA will issue a ruling that the mixed material is not an actual threat to the environment. Then, Defendants contend, that ruling should be applied retroactively to conclude that the material never was an "actual" threat to the environment and any remediation cost was not necessary.

Based on the foregoing, the Court perceives the question as one of timing. For example, are remediation costs necessary if, at the *time* they were incurred, a government entity was threatening civil penalties based on a conclusion that the material in question is a potential threat to the environment? Or, does a subsequent conclusion that a material is not a threat to the environment preclude contribution for all previously incurred remediation costs because they were ultimately determined to be unnecessary? It would seem that the correct answer is to evaluate the necessity of the cost at the time it was incurred. Such a holding would promote the remedial purpose of CERCLA and would

prevent parties from hesitating to respond to actual and potential threats to humans and the environment. The Court, however, will allow the parties an opportunity to research and address this issue before rendering a ruling.

Furthermore, the Court also asks the parties to address the question of ripeness. If the EPA rules against the parties' petition, then any order from this Court addressing issues based on a contrary EPA decision would be an improper advisory opinion. Moreover, the Court assumes that the parties would be entitled to judicial review of any unfavorable EPA opinion, which could further prolong the ultimate adjudication of this matter. Therefore, the parties shall address also address this issue in the requested supplemental briefs.

**B.     Motion to Continue**

Emerald seeks an approximately ten-week continuance of trial for alleged discovery violations and to allow the parties to adequately engage in mediation. Dkt. 47. Defendants oppose the request for a continuance because they believe the parties will be ready for trial if the Court does not grant their motion for summary judgment and dismiss the case. Dkt. 49. The Court finds that a continuance is warranted. The Court finds that (1) the parties may benefit from mediation, (2) the parties' dispositive motions raise questions that the Court is unable to resolve without additional briefing, (3) the possibility exists that the parties are requesting the Court issue advisory opinions, and (4) a stay of the matter pending a ruling from the EPA is likely appropriate. Therefore, the Court grants the motion in part and strikes the trial date and remaining deadlines. The Court will consider setting a new trial after resolving the outstanding dispositive motions.

The motion is denied in all other aspects, including Emerald's request for discovery sanctions. If Emerald truly seeks such relief, it should file an appropriate discovery motion.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 31, is **GRANTED in part** and Emerald's Section 113 claim is dismissed; Emerald's motion for relief from pre-trial deadlines and a continuance of the trial date, Dkt. 47, is **GRANTED in part** and **DENIED in part** and the current scheduling order is **STRICKEN**.

The parties may file supplemental opening briefs addressing the issues identified herein no later than March 15, 2019. The opening briefs shall be no longer than twelve pages. The parties may file supplemental response briefs no longer than eight pages no later than March 22, 2019. The Clerk shall renote the parties' motions for summary judgment, Dkts. 31, 36, 40, for consideration on the Court's March 22, 2019 calendar.

Dated this 5th day of March, 2019.

BENJAMIN H. SETTLE
United States District Judge